UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAROLD KOLTIN, THEODORE KOLTIN and EDITH KOLTIN<br><br>Plaintiffs,<br><br>v.<br><br>JOHN SOUZA, in his capacity as Chief of the Fall River Police Department, THOMAS BURNS, LISA AHAESY, CAPTAIN MCGUIRE, K. NILES, C. YELLE, ROGER LAFLEUR, RICHARD SARAIVA, WAYNE ROSARIO, ARMAND DAYLOR, SCOTT CABRAL, JAMES SILVIA, G. PASTERNAK, D. PAQUET, THOMAS STROJNY, MICHAEL HOAR, NINA WALTERS, P. MCNERNEY, R. BRIAND, K. FURTADO, A. SAUCIER, R. LAVOIE, K. SILVA, PAUL CAREY, L. SILVA and the CITY OF FALL RIVER<br><br>Defendants. | Civil Action No. **05 CV 11119 PBS** |

### First Amended Complaint

Now come Plaintiffs, and for their First Amended Complaint against the Defendants, states as follows:

I.   Parties

1.   Plaintiff, Harold Koltin (hereinafter "Harold"), is a natural person and a resident of Cambridge, Middlesex County, Massachusetts.

2.   Plaintiff, Theodore Koltin (hereinafter "Theodore"), is a natural person and a resident of Fall River, Bristol County, Massachusetts.

3. Plaintiff, Edith Koltin (hereinafter "Edith"), is a natural person and a resident of Fall River, Bristol County, Massachusetts. Edith, who is 83 years of age, is the mother plaintiff's Theodore and Harold.

4. Defendant, John Souza ("Souza"), is the Chief of Police of the Fall River Police Department. Mr. Souza is being sued in his representative capacity as Chief of Police.

5. Defendant, Thomas Burns ("Burns"), is a police officer with the Fall River Police Department.

6. Defendant, Lisa Ahaesy ("Ahaesy"), is a police officer with the Fall River Police Department.

7. Defendant, Captain McGuire ("McGuire"), is a Captain in the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

8. Defendant, K. Niles ("Niles"), is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

9. Defendant, C. Yelle ("Yelle"), is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

10. Defendant, Roger LaFleur ("LaFleur"), is a detective with the Fall River Police Department.

11. Defendant, Richard Saraiva ("Saraiva"), is a police officer with the Fall River Police Department.

12. Defendant, Wayne Rosario ("Rosario"), is a police officer with the Fall River Police Department.

13. Defendant, Armand Daylor ("Daylor"), is a police officer with the Fall River Police Department.

14. Defendant, Scott Cabral ("Cabral"), is a police officer with the Fall River Police Department.

15. Defendant, James Silvia ("Silvia"), is a police officer with the Fall River Police Department.

16. Defendant, G. Pasternak ("Pasternak"), is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

17. Defendant, D. Paquet ("Paquet"), is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

18. Defendant, Thomas Strojny ("Strojny"), is a police officer with the Fall River Police Department.

19. Defendant, Michael Hoar ("Hoar"), is a police officer with the Fall River Police Department.

20. Defendant, Nina Walters ("Walters"), is a natural person and a resident of Fall River, Bristol County, Massachusetts.

21. Defendant, P. McNerney ("NcNerney"), is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

22. Defendant, R. Briand ("Briand"), is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

23. Defendant, K. Furtado ("Furtado"), is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

24. Defendant, A. Saucier ("Saucier"), is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

25. Defendant, R. Lavoie ("Lavoie"), is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

26. Defendant, K. Silva, is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

27. Defendant, Paul Carey ("Carey"), is a police officer with the Fall River Police Department.

28. Defendant, L. Silva, is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants.

29. Defendant, City of Fall River, is an incorporated subdivision of the Commonwealth of Massachusetts.

30. Defendants, Souza, Burns, Ahaesy, McGuire, Niles, Yelle, LaFleur, Saraiva, Rosario, Daylor, Cabral, Silvia, Pasternak, Paquet, Strojny, Hoar, McNerney, Briand, Furtado, Saucier, Lavoie, K. Silva, Carey and L. Silva are hereinafter referred to collectively as the "police defendants."

II. Jurisdiction and Venue

31. This Court has subject matter jurisdiction over the claims set forth herein by virtue of federal question jurisdiction, 28 U.S.C. § 1331 and due to the civil rights claims made herein pursuant to 28 U.S.C. § 1343. This Court has pendent jurisdiction over plaintiff's state law causes of action against these same defendants.

32. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391.

III. Facts

33. Edith lives with her son, Theodore, at 84 Renwood Street, Fall River, Massachusetts (the "Renwood Street Home"). Edith has made the Renwood Street Home her home for the past fifty (50) years. Theodore, age 51, has lived in this home for his entire life.

34. Harold, age 56, lived in his mother's Renwood Street Home until the age of 18 when he left to attend college at the University of Massachusetts at Amherst where he majored in Mass Communications. Following graduation, Harold moved back into his mother's house for four years. He subsequently moved out, but returned to live there in October 1997. He moved out again in May 2000.

35. Up until the incidents in this complaint, plaintiffs had never had any problems with the Fall River Police Department or any other law enforcement agency.

36. In the summer of 1998, there began a series of events commenced by defendant Walters and subsequently by the police defendants which were designed and did, in fact, deprive plaintiffs of their civil rights, caused them to sustain property losses, bodily harm, permanent disability and severe emotional distress.

37. The actions of the defendants have been continuous since that time and continue to this date. These actions include, without limitation, the following:

   a. In August, 1998, defendant Burns aided and abetted defendant Walters in the securing of a false criminal complaint against Theodore. Said complaint was false and malicious. Ultimately, the complaint was dismissed.

   b. In September, 1998, defendant Burns aided and abetted defendant Walters in the securing of a false criminal complaint against Edith. Said complaint was false and malicious. Ultimately, the complaint was dismissed.

   c. In or around October of 1998, plaintiff Edith was assaulted and battered by defendant Walters inside the Highland Elementary School in Fall River, while Edith, a former employee of the Fall River School System, was on her way to see the school principal. Walters, at the time, was employed by the school as a teacher aide before being fired from her position shortly thereafter.

    The defendant Fall River Police Department officers refused to take a complaint from Edith regarding this incident. A complaint was filed in Fall River District Court against defendant Nina, who was found guilty, ordered to pay restitution, and placed on probation.

d. On or about November 2, 1998, defendant Walters, in tandem with her then-husband Clay Walters, perpetrated a double forced entry and assault and battery into the home of plaintiff Edith. Plaintiff Theodore narrowly avoided being struck by a baseball bat wielded by defendant Nina Walters after he looked out the window to witness her bashing plaintiff Harold's car with the baseball bat, which resulted in her observing him and lunging after him, breaking through his bedroom window with the bat. Concurrently, Clay Walters had kicked in the front screen door of the Koltin house, and, when Theodore ran down the hallway from his room to open the inside wooden door, Clay Walters smashed through the window of the outside door with such force as to shatter glass five feet into the house. Plaintiff Harold, standing about five (5) feet away from the door, was impacted by the flying glass in such a way as to cause a bloodied face and a sliver of glass embedded in Harold's only sighted eye.

Clay Walters was charged with assault and battery with a dangerous weapon. The defendant Nina Walters was not charged with the commission of any criminal act, per the decision of defendant LaFleur.

Clay Walters was found guilty by a jury and sentenced to the House of Correction.

Eventually, defendant Nina Walters was charged with "breaking glass in a building." Again, she was ordered to pay restitution to plaintiff Edith.

e. On June 1, 1999, defendant Nina Walters disobeyed two "No Trespass" Orders And came onto the property of plaintiff Edith, punched her in the chest, and threw Her down to the ground, knocking Edith, then near 80 years of age, with osteoporosis and severe scoliosis, unconscious. She then came after plaintiff Theodore. Plaintiff Harold then came out of the house and, seeing his mother lying on the ground motionless and his brother trying to run away from defendant Nina, went to his car to get pepper spray and held it up after Nina picked up a barrel full of grass and approached Harold, swinging the barrel at him while at the same time trying to kick him in the groin. Harold sprayed the pepper spray, but the wind caused the spray to come back at Harold, not affecting Nina Walters. Defendant Saraiva, accompanied by defendants Daylor and Rosario, took a Report, but charged plaintiff Edith Koltin with Assault and Battery against defendant Walters, and charged Harold Koltin with Assault and Battery with a dangerous weapon (to wit: pepper spray) against Walters. Walters was initially charged with Assault and Battery on a person over 60, but "on a person over 60" was later deleted from the charge by police-court liaison John Albin.

When the cases came to trial, defendant Nina admitted to punching and throwing Edith to the ground and was given "6 months probation" by the Judge. Despite the witnessing of the 6-month sentence by the Assistant District Attorney, the entire Koltin family, and the Victim/Witness Advocate Program (which also put the Court's Order in writing in a letter to Edith, THE SENTENCE WAS SUBSEQUENTLY ALTERED BY A PERSON (PERSONS) IN THE COURT to 90 days probation, and then reduced by the Probation Office even further.

8

f. On June 23, 1999, as plaintiffs Edith and Theodore were leaving their house in their car, defendant Walters pulled out of her driveway, raced toward the plaintiffs, and drove directly in front of the plaintiffs, cutting them off. She then left her vehicle and began banging on the Koltins' car, threatening to kill them. Theodore backed his car up and fled with Edith to the Fall River Police station. There, both he and Edith gave separate and matching accounts of the incident, including Assault by means of a Dangerous Weapon (to wit: a motor vehicle), Intimidation of a Witness, and Threats to Do Bodily Harm, to defendants Cabral and Silvia.

However, Cabral and Silvia reversed the charges and charged plaintiff Theodore with the exact crimes committed by defendant Nina, arrested him on the spot, and threw him into a cell in the police station.

g. On November 12, 1999, defendant LaFleur, against whom plaintiff Harold had filed a request for an internal investigation for LaFleur's refusal to file an Offense Report against defendant Walters for her role in the November 2, 1998, A&B, home invasion, and malicious destruction of property, went to the home of defendant Walters' mother to file another false Report against plaintiff Harold that Walters alleged had happened three (3) days earlier, alleging, under "Major Crimes Division," the offense of "Tresspass [sic] After Notice."

At the show cause hearing for such claim, Harold filed counterclaims including, but not limited to, threats to do bodily harm, trespass after notice, filing knowingly false and malicious claims against the Koltins, while herself making threatening and annoying telephone calls to the plaintiffs.

More than five (5) years after such show cause hearing, during which defendant Walters' testimony was contradicted by her own son, and during which Harold provided irrefutable evidence that he could not have been simultaneously in two different places, and during which Harold presented hard evidence of his counterclaims against Walters for threatening and annoying telephone calls (some of which Walters admitted to having made), the Court has rendered no disposition of which Harold is aware on the five-and-a-half year-old matter. Furthermore, plaintiff Harold presented irrefutable evidence that defendant LaFleur knowingly lied in his allegations against Harold, such evidence supported, in part, by telephone records provided by Verizon.

h. On or about June 11, 2000, defendant Niles ("Call Taker"), defendant Yelle ("Call Clearer"), and defendant Strojny failed to take a report from plaintiff Edith, instead writing "50Purple (Fall River Police code for 'mentally ill and violent') lady I think someone has to do something regarding this women [sic] She really is 50 P." Defendant Strojny appeared at the Koltin residence entered the house, and backed plaintiff Edith up against the wall, stating that she was "in trouble" with the police.

i. In June or July of 2000, plaintiffs Edith and Theodore arrived home to find defendant Walters emerging from their previously-locked garage, after she had caused damage to the car parked in the garage. THIS INCIDENT WAS WITNESSED BY A NEIGHBOR. Edith called the police.
When the police arrived, defendant Strojny refused to listen to the incident as described by Edith and Theodore. He told them he was not going to see Walters,

10

and he was not going to make out any Report against Walters. Strojny then told Edith she was going with him to the Corrigan Mental Health Center, she again attempted to explain what had happened and that there was a witness. Strojny then reacted by physically grabbing Edith and throwing her (at near 80 years of age, suffering from osteoporosis and severe scoliosis) into the cruiser roughly. When they arrived at the Corrigan Mental Health Center, Strojny went in first and then emerged a few minutes later – a break in the pattern of the police escorting Edith in with them. When he returned to the cruiser, he then took Edith into the Mental Health Center, where she was immediately written up as "delusional" for the first time – a diagnosis vehemently denied by Edith's psychiatrist.

j.  On May 24, 2002, defendant Ahaesy fabricated an entirely fictitious Report against plaintiff Edith, actually quoting Edith as saying that she was going to "off herself and her son." A tape of Edith's 911 call has not the slightest of evidence that she was contemplating harming herself or anyone else. The 911 tape demonstrates that defendant Ahaesy was communicating with someone else at the police station, in whispers, while on the telephone with Edith.
As instructed by Ahaesy, Edith left the house, which she reported had again been the object of skunk spraying perpetrated by defendant Walters.
When Edith returned to the house, she and plaintiff Theodore found the house surrounded by several police vehicles. They stayed far enough away from the house so as not to be spotted by any of the several defendant police officers entering the house.

When the defendant police officers involved in the forced entry/destruction of property/armed robbery/conversion (McNerney, Briand, Furtado, Saucier, Lavoie, K. Silva, Carey, D. Paquet, and L. Silva) left the house, plaintiffs Edith and Theodore found the front door on the floor, along with part of the wall to which it was attached, along with a virtual hurricane of destruction of property, including, but not limited to, the theft of Harold's VCR, the theft of Harold's videotapes, the overturning and destruction of invaluable possessions left by the late husband and father Milton Koltin, along with a note left by defendant Carey on Edith's kitchen table stating that they were compelled to force entry to check on her well-being. The note requested that Edith call the police station to let them know that she was O.K.

Edith did call the police station (another call for which the plaintiffs have secured the tape), and the police defendants responded by sending more cruisers to the Koltin residence for the express purpose of "Section 12-ing" Edith, forcing her into a cruiser, and, yet again, taking her to the Corrigan Mental Health Center. The "Section 12 both of them" order came from defendant Captain McGuire, without any Court Order for such Section 12.

k.   On November 26, 2002, defendant Pasternak stopped plaintiff Theodore as he was driving his mother, plaintiff Edith, at or near 100 William Street in Fall River, Massachusetts. Pasternak, accompanied by defendant Paquet, extricated Theodore from his car and threw him head-first into the side of the police cruiser. They then handcuffed him and, while down in handcuffs, began relentless beating of him. They took him to the rear of his car and pushed his head onto the trunk of his car, all the while continuing the beating. When Theodore began to scream for help, Pasternak tried thrusting a large round

object down Theodore's throat, silencing him, until he was about to lose consciousness. Pasternak then put Theodore in a headlock and tried strangling him. They then left Edith, at age 80, abandoned in the middle of the street and took Theodore away to the police station. When he complained that the cuffs were too tight around his wrists, Pasternak responded by tightening the cuffs even further, causing Theodore to begin bleeding from the wrists. Other police officers joined in as Theodore was dragged towards a cell. They complained that he was bleeding all over their floor and that he would have to clean it up. Only when Theodore complained of chest pains did the defendant officers summons an ambulance. They accompanied Theodore in the ambulance, continuing to taunt him as he suffered excruciating pain.

> Once at the Charlton Memorial Hospital, defendants Pasternak and Paquet – who all the while refused to identify themselves or answer to why they were torturing Theodore – chained him to a gurney and surrounded him in close proximity, preventing him any privacy as he was treated by hospital nurses who denied him water, refused to let him call his lawyer, performed drug tests on him without his knowledge or permission, refused to identify themselves, injected him with the drug Ativan AFTER he had informed them that he was allergic to many medications. Further, they told him that he was in police custody, and that they were going to do whatever the defendant police officers told them to do.
>
> To this day, Theodore remains unaware of what the reason for the brutal beating was for, and defendant Souza has refused to respond to any requests for any records – either about incidents before or after the brutal beating of Theodore. Theodore, as reported after examination by an independent medical clinic, sustained permanent loss of range of motion in his arms directly and proximately

as a result of the police beating. Furthermore, he has suffered permanent sensory nerve damage to his hand.

Theodore, Edith, and Harold have each suffered severe emotional distress, directly and proximately related to this particular action of brutality against Theodore, in addition to the severe emotional distress caused by other acts of both the police defendants and the other defendants, as well as by acts of persons and entities unnamed in this Complaint.

l.  In or around the summer of 1999, plaintiff Harold called a lieutenant about defendant Hoar's failing/refusing to file a Report regarding vandalism to his car. The lieutenant apologized and sent Hoar to the Koltin residence to investigate the claim. When Harold greeted Hoar, who was accompanied by defendant Lavoie, Hoar said to Harold: "If you ever call my boss again, I will become your worst nightmare," followed by remarks about some of the unlawful things he would do, and from which Harold would not be able to escape.

m. Harold sent several Letters of Presentment, pursuant to M.G.L. c. 258, to the City of Fall River, the most recent of which was sent via certified mail in November of 2004. The City of Fall River has responded to none of the plaintiffs' Letters of Presentment.

## COUNT I
(42 U.S.C. § 1983 against the police defendants and the City of Fall River)

38.   Plaintiffs reallege and incorporate by reference as if fully set forth herein, the allegations of paragraphs 1- 37 above.

39.   The police defendants, acting under color of law, deprived plaintiffs of their liberty and property interests without due process of law in violation of the 14th Amendment to the United States Constitution.

40.   The police defendants, acting under color of law, deprived plaintiffs of their rights, privileges and immunities secured by the Constitution and laws of the United States and the Commonwealth of Massachusetts.

41.   The City of Fall River knew of the repeated civil rights violations perpetrated by its employees, the police defendants, and took no steps to prevent further such violations.  Thus, the City of Fall River is liable for the civil rights violations of the police defendants.

42. As a result of the civil rights violations of the police defendants and the City of Fall River, plaintiffs have suffered emotional and monetary damages.

## COUNT II
(M.G.L. c. 12, §§ 11H and 11I state civil rights act against all individual defendants)

43. Plaintiffs reallege and incorporate by reference as if fully set forth herein, the allegations of paragraphs 1- 42 above.

44. The individual defendants through the use of threats, intimidation and coercion, have interfered with plaintiffs' exercise and enjoyment of the rights secured by the constitution and laws of the Untied States and the Commonwealth of Massachusetts.

45. As a direct and proximate result of the civil rights violations of the individual defendants, plaintiffs have suffered emotional and monetary damages.

## COUNT III
(Assault and Battery against defendants Pasternak and Paquet)

46. Plaintiffs reallege and incorporate by reference as if fully set forth herein, the allegations of paragraphs 1- 45 above.

47. Defendants Pasternak and Paquet assaulted and battered plaintiff, Theodore Koltin, causing him substantial pain and permanent bodily harm.

48. The actions of defendants Pasternak and Paquet have caused plaintiff, Theodore Koltin, to suffer permanent injury and disability.

49. As a result of the defendants' actions, plaintiff, Theodore Koltin, has sustained emotional, physical and financial injury.

## COUNT IV
(Trespass, Destruction of Property and Conversion against defendants McNerney, Briand, Furtado, Saucier, Lavoie, K. Silva, Carey, Paquet and L. Silva)

50. Plaintiffs reallege and incorporate by reference as if fully set forth herein, the allegations of paragraphs 1- 49 above.

51. The defendant officers perpetrated a forced entry, based on a totally fabricated Report, without a warrant, with an instruction from the defendant Captain McGuire (without a Court Order) to "Section 12" both plaintiff Edith and plaintiff Theodore, and proceeded to vandalize, steal, trash, and otherwise invade the privacy of and intentionally cause severe emotional distress to plaintiffs Harold, Edith, and Theodore.

## COUNT V
(False Imprisonment against defendants Cabral, Silvia, Pasternak and Paquet)

52. Plaintiffs reallege and incorporate by reference as if fully set forth herein, the allegations of paragraphs 1- 51 above.

53. The defendants named in this Count perpetrated false arrests and false imprisonments, knowingly and willfully, against plaintiff Theodore, denying him his civil rights and his right to due process under the Fourteenth Amendment of the United States constitution.

## COUNT VI
(Intentional Infliction of Emotional Distress the individual defendants)

54. Plaintiffs reallege and incorporate by reference as if fully set forth herein, the allegations of paragraphs 1-54 above.

55. The individual defendants engaged in the actions and behaviors set forth herein with the intention that they would cause plaintiffs to suffer severe and long-term emotional distress.

56. The actions and behaviors of the individual defendants as set forth herein caused plaintiffs to suffer enormous emotional distress.

- 57. The actions and behaviors of the individual defendants as set forth herein violated
- the plaintiffs' protected rights against unreasonable search and seizure, and other
- civil rights of the U.S. Constitution, the State's Declaration of Rights, and other state laws.

58. The actions of the individual defendants as set forth herein were unlawful, humiliating, intimidating, and improper.

59. The actions of the individual defendants as set forth herein caused each of the plaintiffs to suffer, and to continue to suffer, severe mental anguish, psychological and emotional distress with physical and physiological side effects, and severe pain and suffering, some or all of which may be permanent, and which have required and continue to require medical and psychological treatment.

60. The actions of the individual defendants, with the knowledge of the City of Fall River, as communicated directly by the plaintiffs to the Mayor of the City of Fall River (Ed Lambert) in 1998 and 1999 and in the years since then, include but are not limited to the violations of assault and battery, false and unlawful arrest, false and unlawful imprisonment, outrageous conduct, intentional infliction of physical harm, intentional infliction of emotional distress, invasion of privacy, negligence, gross negligence, recklessness, negligent infliction of emotional distress, negligent hiring, negligent retention, and negligent supervision.

WHEREFORE, plaintiffs request the following:

1. Judgment on Count I in an amount to be determined at trial plus interest, costs and attorneys fees.

2. Judgment on Count II in an amount to be determined at trial plus interest, costs and attorneys fees.

3. Judgment on Count III in an amount to be determined at trial plus interest and costs.

4. Judgment on Count IV in an amount to be determined at trial plus interest and costs.

5. Judgment on Count V in an amount to be determined at trial plus interest and costs.

6. Judgment on Count VI in an amount to be determined at trial plus interest and costs.

7. An Order under Counts I and II permanently enjoining the defendants from continuing to engage in conduct against the plaintiffs as found at trial which violates the provisions of 42 U.S.C. §1983 and M.G.L. c.12, §§11H & 11.

8. Such other relief as the Court determines is just.

       Plaintiffs

       Pro Se,

*/s/ Harold Koltin*
Harold Koltin
P.O. Box 275
Malden, MA 02148
(781) 420-9872

*/s/ Theodore Koltin*
Theodore Koltin
84 Renwood Street
Fall River, MA 02720
Mailing Address
P.O. Box 882
Fall River, MA 02722
(508) 673-9577

*/s/ Edith Koltin*
Edith Koltin
84 Renwood Street
Fall River, MA 02720
Mailing Address
P.O. Box 882
Fall River, MA 02722
(508) 673-9577

Dated: August 16, 2005