UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
**********************************************

HAROLD KOLTIN, THEODORE
KOLTIN, and EDITH KOLTIN,
              Plaintiffs,

v.

JOHN SOUZA (both individually
and in his capacity as Chief
of the Fall River Police De-
partment), THOMAS BURNS, LISA
AHAESY, CAPTAIN MCGUIRE, K.
NILES, C. YELLE, ROGER LAFLEUR,
RICHARD SARAIVA, WAYNE ROSARIO,
ARMAND DAYLOR, SCOTT CABRAL,
JAMES SILVIA, G. PASTERNAK, D.
PAQUET, THOMAS STROJNY, MICHAEL
HOAR, P. MCNERNEY, R. BRIAND,
K. FURTADO, A. SAUCIER, R. LAVOIE,
K. SILVA. L. SILVA, PAUL CAREY,
LIEUTENANT COSTA, JOHN ALBIN (all
of whom both individually and in
their capacities as police officers),
NINA WALTERS, NATHAN DINUCCI, JEFFREY
ENTIN, SOUTHCOAST HOSPITALS GROUP,
CHARLTON MEMORIAL HOSPITAL, RONALD
GOODSPEED (both individually and in
his capacity as President of SOUTH-
COAST HOSPITALS GROUP), JANE DOES 1-6 & STAFF
MEMBERS/ADMINISTRATORS (identities
refused) IN ANY WAY INVOLVED IN THE MIS-
TREATMENT OF THEODORE KOLTIN AT
CHARLTON MEMORIAL HOSPITAL ON NOVEMBER
26, 2002 (both individually and in
their capacities as Hospital employees),
and the CITY OF FALL RIVER,
              Defendants.
**********************************************

CIVIL ACTION NO. 05 CV 11119
PBS

FILED
IN CLERKS OFFICE

2005 NOV 28 P 2: 06

U.S. DISTRICT COURT
DISTRICT OF MASS.

### SECOND AMENDED COMPLAINT

Now come the Plaintiffs, and, for their Second Amended Complaint
against the Defendants, state as follows:

I. <u>Parties</u>

  1. Plaintiff Harold Koltin (hereinafter "Harold") is a natural per-
     son and a resident of Somerville, Middlesex County, Massachusetts.

  2. Plaintiff Theodore Koltin (hereinafter "Theodore") is a natural
     person and a resident of Fall River, Bristol County, Massachusetts.

  3. Plaintiff Edith Koltin (hereinafter "Edith") is a natural person
     and a resident of Fall River, Bristol County, Massachusetts. Edith,
     who is 83 years of age, is the mother of Plaintiffs Theodore and
     Harold.

4. Defendant John Souza ("Souza") is the Chief of Police of the Fall River Police Department. Mr. Souza is being sued both individually and in his capacity as Chief of Police.

5. Defendant Thomas Burns ("Burns") is a police officer with the Fall River Police Department. Mr. Burns is being sued both individually and in his capacity as police officer.

6. Defendant Lisa Ahaesy ("Ahaesy") is a police officer with the Fall River Police Department. Ms. Ahaesy is being sued both individually and in her capacity as police officer.

7. Defendant Captain McGuire ("McGuire") is a Captain in the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants. Mr. McGuire is being sued both individually and in his capacity as police captain.

8. Defendant K. Niles ("Niles") is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants. Niles is being sued both individually and in his/her capacity as police officer.

9. Defendant C. Yelle ("Yelle") is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his/her first name during discovery when this information is produced by the defendants. Yelle is being sued both individually and in his/her capacity as police officer.

10. Defendant Roger LaFleur ("LaFleur") is a detective with the Fall River Police Department. Mr. LaFleur is being sued both individually and in his capacity as police officer/detective.

11. Defendant Richard Saraiva ("Saraiva") is a police officer with the Fall River Police Department. Mr. Saraiva is being sued both individually and in his capacity as police officer.

12. Defendant Wayne Rosario ("Rosario") is a police officer with the Fall River Police Department. Mr. Rosario is being sued both individually and in his capacity as police officer.

13. Defendant Armand Daylor ("Daylor") is a police officer with the Fall River Police Department. Mr. Daylor is being sued both individually and in his capacity as police officer.

14. Defendant Scott Cabral ("Cabral") is a police officer with the Fall River Police Department. Mr. Cabral is being sued both individually and in his capacity as police officer.

15. Defendant James Silvia ("Silvia") is a police officer with the Fall River Police Department. Mr. Silvia is being sued both individually and in his capacity as police officer.

16. Defendant G. Pasternak ("Pasternak") is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants. Mr. Pasternak is being sued both individually and in his capacity as police officer.

17. Defendant D. Paquet ("Paquet") is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his first name during discovery when this information is produced by the defendants. Mr. Paquet is being sued both individually and in his capacity as police officer.

18. Defendant Thomas Strojny ("Strojny") is a police officer with the Fall River Police Department. Mr. Strojny is being sued both individually and in his capacity as police officer.

19. Defendant Michael Hoar ("Hoar") is a police sergeant with the Fall River Police Department. Mr. Hoar is being sued both individually and in his capacity as police sergeant.

20. Defendant P. McNerney ("McNerney") is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his/her first name during discovery when this information is produced by the defendants. McNerney is being sued both individually and in his/her capacity as police officer.

21. Defendant K. Furtado ("Furtado") is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his/her first name during discovery when this information is produced by the defendants. Furtado is being sued both personally and in his/her capacity as police officer.

22. Defendant R. Briand ("Briand") is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first ame and request permission to proceed against this defendant and amend to include his/her first name during discovery when this information is produced by the defendants. Briand is being sued both individually and in his/her capacity as police officer.

23. Defendant A. Saucier ("Saucier") is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his/her first name during discovery when this information is produced by the defendants. Saucier is being sued both individually and in his/her capacity as police officer.

24. Defendant R. Lavoie ("Lavoie") is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his/her first name during discovery when this information is produced by the defendants. Lavoie is being sued both individually and in his capacity as police officer.

3

25. Defendant K. Silva is a police officer with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his/her first name during discovery when this information is produced by the defendants. K. Silva is being sued both individually and in his/her capacity as police officer.

26. Defendant L. Silva is a police officer with the Fall river Police Department. Plaintiffs do not know this defendant's first name and request permission to proceed against this defendant and amend to include his/her first name during discovery when this information is produced by the defendants. L. Silva is being sued both individually and in his/her capacity as police officer.

27. Defendant Paul Carey is a police officer with the Fall River Police Department. Paul Carey ("Carey") is being sued both individually and in his capacity as police officer.

28. Defendant Lieutenant Costa is a ("Costa") police lieutenant with the Fall River Police Department. Plaintiffs do not know this defendant's first name and request to proceed against this defendant and amend to include his/her first name during discovery when this information is produced by the defendants. Costa is being sued both individually and in his capacity as police lieutenant.

29. Defendant John Albin is a police officer with the Fall River Police Department. John Albin ("Albin") is being sued both individually and in his capacity as police officer.

30. Defendants Souza, Burns Ahaesy, McGuire, Niles, Yelle, LaFleur, Saraiva, Rosario, Daylor, Cabral, Silvia, Pasternak, Paquet, Strojny, Hoar, McNerney, Furtado, Briand, Saucier, Lavoie, K. Silva, L. Silva, Carey, Costa, and Albin are hereinafter referred to collectively as the "police defendants."

31. Defendant Nina Walters ("Walters") is a natural person and a resident of Fall River, Bristol County, Massachusetts.

32. Defendant Nathan DiNucci is a natural person and a resident of Assonet, Bristol County, Massachusetts.

33. Defendant Jeffrey Entin is a natural person and a resident of Fall River, Bristol County, Massachusetts.

34. Defendant Southcoast Hospitals Group is a corporate entity of which Defendant Charlton Memorial Hospital is part. It is located in Fall River, Bristol County, Massachusetts, according to the entity.

35. Defendant Charlton Memorial Hospital is a medical center located in Fall River, Bristol County, Massachusetts.

36. Defendant Ronald Goodspeed is President of both Southcoast Hospitals Group and Charlton Memorial Hospital and has a business address in Fall River, Bristol County, Massachusetts, according to the Charlton Memorial Hospital. Mr. Goodspeed is being sued both individually and in his capacity as Southcoast Hospitals Group/Charlton Memorial Hospital President.

37. Defendant Jane Doe 1 is a nurse at Charlton Memorial Hospital. Plaintiffs do not know the full name of this defendant, although her last name is believed to be GAGNE. Ms. Gagne is being sued both individually and in her capacity as a treater at the Charlton Memorial Hospital. Plaintiffs request permission to proceed against this defendant and amend to include her full identity during discovery when this information is produced by the defendants.

38. Defendant Jane Doe 2 is a nurse at Charlton Memorial Hospital. Plaintiffs do not know this defendant's name and request permission to proceed against this defendant and amend to include her name during discovery when this information is produced by the defendants. Jane Doe 2 is being sued both individually and in her capacity as a treater at the Charlton Memorial Hospital.

39. Defendant Jane Doe 3 is a nurse at Charlton Memorial Hospital. Plaintiffs do not know this defendant's name and request permission to proceed against this defendant and amend to include her name during discovery when this information is produced by the defendants. Jane Doe 3 is being sued both individually and in her capacity as a treater at the Charlton Memorial Hospital.

40. Defendant Jane Doe 4 is a nurse at Charlton Memorial Hospital. Plaintiffs do not know this defendant's name and request permission to proceed against this defendant and amend to include her name during discovery when this information is produced by the defendants. Jane Doe 4 is being sued both individually and in her capacity as a treater at the Charlton Memorial Hospital.

41. Defendant Jane Doe 5 is a nurse at Charlton Memorial Hospital. Plaintiffs do not know this defendant's name and request permission to proceed against this defendant and amend to include her name during discovery when this information is produced by the defendants. Jane Doe 5 is being sued both individually and in her capacity as a treater at the Charlton Memorial Hospital.

42. Defendant Jane Doe 6 is a receptionist at Charlton Memorial Hospital. Plaintiffs do not know this defendant's name and request permission to proceed against this defendant and amend to include her name during discovery when this information is produced by the defendants. Jane Doe 6 is being sued both individually and in her capacity as a receptionist at the Charlton Memorial Hospital.

43. Defendant City of Fall River is an incorporated subdivision of the Commonwealth of Massachusetts.

II.  Jurisdiction and Venue

44. This Court has subject matter jurisdiction over the claims set forth herein by virtue of federal question jurisdiction, 28 U.S.C. §1331 and due to the civil rights claims made herein pursuant to 28 U.S.C. §1343. This Court has pendent jurisdiction over plaintiffs' state law causes of action against these same defendants.

45. Venue is appropriate in this district pursuant to 28 U.S.C. §1391.

III. Facts

46. Edith lives with her son, Theodore, at 84 Renwood Street, Fall

River, Massachusetts (the "Renwood Street Home"). Edith has made the Renwood Street Home her home for the past fifty (50) years. Theodore, age 51, has lived in this home for his entire life.

47. Harold, age 56, lived in his mother's Renwood Street Home until the age of 18, when he left to attend college at the University of Massachusetts at Amherst, where he majored in Mass Communications. Following graduation, Harold moved back into his mother's house for four years. He subsequently moved out, but returned to live there in October , 1997. He moved out again in May, 2000.

48. Up until the incidents in this Complaint, Plaintiffs had never had any problems with the Fall River Police Department or any other law enforcement agency.

49. In the summer of 1998, there began a series of events commenced by defendant Walters and subsequently continued and advanced by the police and the other defendants which were designed and did, in fact, deprive plaintiffs of their civil rights, caused them to sustain property losses, bodily harm, permanent disability, and severe emotional distress.

50. The actions of the defendants have been continuous since that time and continue to this date. These actions include, but are not limited to, the following:

   a. In August, 1998, defendant Burns aided and abetted defendaant Walters in the securing of a false criminal complaint against Theodore. Said complaint was false and malicious. Ultimately, the complaint was dismissed.

   b. In September, 1998, defendant Burns aided and abetted defendant Walters in the securing of a false criminal complaint against Edith. Said complaint was false and malicious. Ultimately, the complaint was dismissed.

   c. In or around October, 1998, plaintiff Edith was assaulted and beaten by defendant Walters inside the Highland Elementary School in Fall River, while Edith, a former employee of the Fall River School System, was on her way to see the school principal. Walters, at the time, was employed by the school as a teacher aide before being fired from her position shortly thereafter.
   The defendant Fall River Police Department officers refused to take a complaint from Edith regarding this incident. A complaint was filed in Fall River District Court against defendant Walters, who was found guilty, ordered to pay restitution, and placed on probation.

   d. On or around November 2, 1998, defendant Walters, in tandem with her then-husband Clay Walters, perpetrated a double forced entry and assault and battery into the home of plaintiff Edith. Plaintiff Theodore narrowly avoided being struck by a baseball bat wielded by defendant Nina Walters after he looked out the window to witness her bashing plaintiff Harold's car with the baseball bat, which resulted in her observing him and lunging after him, breaking through his bedroom window with the bat.
   Concurrently, Clay Walters had kicked in the front screen door

6

of the Koltin house, and, when Theodore ran down the hallway
from his room to open the inside wooden door, Clay Walters
smashed through the window of the outside door with such force
as to shatter glass about five (5) feet into the house. Plain-
tiff Harold, standing about five (5) feet away from the door,
was impacted by the flying glass in such a way as to cause a
bloodied face and a sliver of glass embedded in Harold's only
sighted eye.

Clay Walters was charged with assault and battery with a dan-
gerous weapon. The defendant Nina Walters was not charged with
the commission of any criminal act, per the decision of defen-
dant LaFleur.

Clay Walters was found guilty by a jury and sentenced to the
House of Correction.

Eventually, defendant Nina Walters was charged with "breaking
glass in a building." Again, she was ordered to pay restitu-
tion to plaintiff Edith.

e. On June 1, 1999, defendant Nina Walters disobeyed two (2) "No
Trespass" Orders and came onto the property of plaintiff Edith,
punched her in the chest, and threw Edith down to the ground,
knocking Edith, then near 80 years of age, with osteoporosis
and severe scoliosis, unconscious. Walters then came after
plaintiff Theodore, who had heard screaming and emerged from
his house. The yelling by Nina at Theodore led Harold to come
out of the house and, seeing his mother lying on the ground mo-
tionless and his brother trying to run away from the pursuing
Walters, went to the car to get his pepper spray and held it up
after Nina picked up a barrel full of grass and came after
Harold, swinging the barrel at him while at the same time try-
ing to kick him in the groin. Harold sprayed the pepper spray,
but the wind caused the spray to come back and affect only
Harold, not Nina Walters.

Defendant Saraiva, accompanied by defendants Daylor and Rosario,
took a Report, but charged plaintiff Edith Koltin with Assault
and Battery against the defendant Nina Walters, and charged
plaintiff Harold with Assault and Battery with a dangerous wea-
pon (to wit: pepper spray) against Walters.

Walters was initially charged with Assault and Battery on a
Person over 60, but "on a person over 60" was later deleted
from the charge by defendant police-court liaison John Albin.
When the cases came to trial, Nina admitted to punching and
throwing Edith to the ground and was given "6 months probation"
by the Judge.

Despite the witnessing of the 6-month sentence by the Assistant
District Attorney, the entire Koltin family, and the Victim/Wit-
ness Advocate Program (which also put the Court's Order in writ-
ing to Edith, THE SENTENCE WAS SUBSEQUENTLY ALTERED BY A PERSON
(PERSONS) IN THE COURT to "90 days probation," and then reduced
by the Probation Office even further.

f. On June 23, 1999, as plaintiffs Edith and Theodore were leaving
their house in their car, defendant Walters pulled out of her
driveway, raced toward the plaintiffs, and drove directly in
front of the plaintiffs, cutting them off. Walters then left her
vehicle and began banging on the Koltins' car, threatening to
kill them.

Theodore backed his car up and fled with Edith to the Fall River
Police station. There, both he and Edith gave separate and

matching accounts of the incident, including Assault by Means
of a Dangerous Weapon (to wit: a motor vehicle), Intimidation
of a Witness, and Threats to Do Bodily Harm, to defendants
Cabral and Silvia.
During and following Theodore's account of the incident, other
police defendants, and unidentified non-defendant police officers
began surrounding Theodore and taunting him.
One such individual, in plain clothes, claimed he worked in the
Records Office of the Fall River Police Department and, after
asking Theodore's address, said, **"Oh, so you live with the Jews."**
Theodore asked the name of this police person, who responded
that his name was "Ed Schwartz."
Harold subsequently confirmed with the Records Office that, not
only is there no "Ed Schwartz" in that three-female office, but
there is no "Ed Schwartz" in the entire Police Department, uni-
formed or civilian. (The true identity of the person who falsely
identified himself, in the presence of other police defendants,
is still unknown, despite requests for internal investigation of
this and other matters - all unanswered by defendant Souza.)
Subsequent to the anti-Semitic slur and false identification
of the police individual, defendants Cabral and Silvia REVERSED
THE CHARGES AND CHARGED THEODORE WITH THE EXACT CRIMES COMMITTED
BY DEFENDANT NINA WALTERS, ARRESTED HIM ON THE SPOT, AND THREW
HIM INTO A JAIL CELL IN THE POLICE STATION.

g. On or about November 12, 1999, defendant LaFleur, against whom
plaintiff Harold had filed a request for an internal investi-
gation for LaFleur's refusal to file a proper Offense Report
against defendant Walters for her role in the November 2, 1998,
A&B, home invasion, and malicious destruction of property, went
to the home of defendant Walters' mother to meet with Walters
to file yet another false Report, against Plaintiff Harold, that
Walters alleged had happened three (3) days earlier, alleging,
under the "Major Crimes Division," the offense of "Tresspass
[sic] After Notice."
At the Show Cause Hearing for such claim, Harold filed counter-
claims including, but not limited to, Nina's threats to do bod-
ily harm, trespass after notice, filing knowingly false and ma-
licious claims against the Koltins, and making threatening and
annoying telephone calls to the plaintiffs.
More than five (5) years after such Show Cause Hearing, during
which defendant Walters' testimony was contradicted by her own
son, and during which Harold provided irrefutable evidence that
he could not have been simultaneously in two different places,
and during which Harold presented hard evidence of his counter-
claims against Walters for threatening and annoying telephone
calls (some of which Walters admitted to having made), the
Court has rendered no disposition of which Harold is aware on
the five-and-a-half-year-old matter.
Furthermore, plaintiff Harold presented irrefutable evidence
that LaFleur lied in his allegations against Harold, such evi-
dence supported, in part, by telephone records provided by
Verizon.

h. In or around the summer of 1999, plaintiff Harold called a
police lieutenant at the Fall River Police Department about
defendant Sergeant Hoar's failing/refusing to file a Report
regarding continuous vandalism to his car. The lieutenant a-
pologized and sent Hoar to the Koltin residence to investi-

gate the claim. When Harold greeted Hoar, who was accompanied by defendant Lavoie, Hoar said to Harold: "If you ever call my boss again, I will become your worst nightmare," followed by remarks about some of the unlawful things he would do, and from which Harold would not be able to escape.

i. On or about June 11, 2000, defendant Niles ("Call Taker"), defendant Yelle ("Call Clearer"), and defendant Strojny failed to take a report from plaintiff Edith, instead writing "50 Purple (Fall River Police code for 'mentally ill and violent') lady. I think someone has to do something about this women [sic] She really is 50P."
Defendant Strojny then appeared at the Koltin residence, entered the house, and backed plaintiff Edith up against the wall, stating that she was "in trouble" with the police.

j. In June or July of 2000, plaintiffs Edith and Theodore arrived home to find defendant Walters emerging from their previously-locked garage, after she had caused damage to the car parked in the garage. THIS INCIDENT WAS WITNESSED BY A NEIGHBOR. Edith called the police.
When the police arrived, defendant Strojny refused to listen to the incident as described by Edith and Theodore. He told them that he was not going to see Walters, and that he was not going to make out any Report against Walters.
Strojny then told Edith she was going with him to the Corrigan Mental Health Center. She again attempted to explain what had happened, and that there was a witness.
Strojny then reacted by physically grabbing Edith and throwing her (at nearly 80 years of age, and suffering from osteoporosis and severe scoliosis) into the cruiser roughly.
When they arrived at the Corrigan Mental Health Center, Strojny went in first, leaving Edith in the cruiser - a break in the established pattern of escorting her into the Center during previous failed attempts to have her committed - and then emerged a few minutes later and took Edith into the Mental Health Center, where she was immediately written up, without doing any intake, as "delusional" for the first time. This diagnosis was vehemently denied by Edith's psychiatrist, who knew Edith to be "anxious" and "stressed" because of the actions of the police.

k. In or around April of 2001, plaintiff Theodore received a Summons to appear in Fall River District Court to answer to charges of "criminal harassment."
Defendant Jeffrey Entin agreed to represent Theodore in this matter.
At the hearing for such charge, Theodore appeared in Court, but no police officer charging Theodore with said crime appeared in Court.
Defendant Entin exited the courtroom while Theodore awaited the appearance of the judge.
No judge appeared during the time Theodore waited in the courtroom.
Entin later reappeared and told Theodore that the charges were dismissed, and that the police would no longer threaten, harass, intimidate, or conduct surveillance of the Koltin residence.
Entin offered no paperwork confirming this information to Theodore.
Defendant Entin would later claim that he never represented Theodore Koltin.

l. On May 24, 2002, defendant Ahaesy fabricated an entirely
fictitious Report against plaintiff Edith, actually quoting
Edith as saying she was going to "off herself and her son."
An audio tape of said 911 call by Edith has no evidence what-
soever that she was contemplating harming herself or anyone
else. Additionally, the 911 tape demonstrates that defendant
Ahaesy was communicating with someone else at the police sta-
tion, in whispers, while on the telephone with Edith.
As instructed by Ahaesy, Edith left the house, which she re-
ported had again been the object of skunk spraying perpetrated
by defendant Walters.
When Edith returned to the neighborhood, she and plaintiff
Theodore found the house surrounded by several police vehicles.
They stayed far enough away from the house so as not to be
spotted by any of the several defendant police officers enter-
ing the house.
When the defendant police officers involved in the forced entry-
/malicious destruction of property/armed robbery/conversion
(McNerney, Briand, Furtado, Saucier, Lavoie, K. Silva, L. Silva, Carey,
D. Paquet) left the house, plaintiffs Edith and Theodore found
the front door on the floor, along with part of the wall to
which it was attached, along with a virtual hurricane of de-
struction of property, including, but not limited to, the theft
of Harold's VCR, the theft of Harold's videotapes, the over-
turning and destruction of invaluable possessions left by the
late husband and father Milton Koltin, along with a note left
by defendant Carey on Edith's kitchen table stating that they
were "compelled to force entry to check on [her] well-being." The
note requested that Edith call the police station to let them
know that she was O.K.
Edith did call the police station (another call for which the
plaintiffs have secured the tape), and the police defendants
responded by sending more cruisers to the Koltin residence
for the express purpose of "Section 12-ing" Edith, forcing her
into a cruiser, and, yet again, taking her to the Corrigan
Mental Health Center (as had been threatened on various anony-
mous death-threat messages left on Harold's answering machine).
The "Section 12 both of them" order came from defendant Captain
McGuire, without any Court Order for such forced custody, and
absent any reason to Section 12 plaintiffs Edith and Theodore
without a Court Order.

m. On November 26, 2002, defendant Pasternak stopped plaintiff
Theodore as he was driving his mother, plaintiff Edith, at or
near 100 William Street in Fall River, Massachusetts. Pasternak,
accompanied by defendant Paquet, extricated Theodore from his
car and threw him head-first into the side of the police cruiser.
They then dragged him to the rear of his car, pushed his face
into the trunk of the car, handcuffed him, and continued beating
him relentlessly. Although Theodore offered no resistance, the
beating continued.
When Theodore began to scream for help, Pasternak thrusted a
large round object into Theodore's mouth and tried forcing it
down his throat, silencing him, until Theodore was about to lose
consciousness.
Pasternak then put Theodore in a headlock and began strangling
him.
They then took Theodore away in the cruiser, abandoning Edith,
age 80, in the middle of the street.
At the police station where Theodore was taken, Theodore com-

10

plained that the handcuffs were too tight around his wrists,
Pasternak responded by tightening the cuffs even further,
causing Theodore to begin bleeding from the wrists.
Other police officers joined in as Theodore was pushed towards
a jail cell. They complained that he was bleeding all over
their floor and that he would have to clean it up.
Only when Theodore complained of chest pains did the defendant
officers summons an ambulance.
They accompanied Theodore in the ambulance, continuing to taunt
him as he continued to suffer excruciating pain.

n. Once at the Charlton Memorial Hospital, defendants Pasternak
and Paquet - who all the while refused to identify themselves
or answer to why they were torturing Theodore - chained him to
a gurney and surrounded him in close proximity, preventing him
any privacy as he was "treated" by hospital nurses who denied
him water, refused to let him use the phone to call his lawyer,
performed drug tests on him without his knowledge or permission,
refused to identify themselves (at one point turning their name
badges around), and injected him with Ativan AFTER he had in-
formed them that he was allergic to many medications.
Further the nurses told him that he was in police custody, and
they were going to do whatever the defendant police officers
told them to do with him.
When Edith ultimately arrived at the Hospital, the defendant
officers refused to allow her to see her son. The receptionist
repeatedly told Edith that she was not permitted to see her son,
per the orders of the police officers.
Meanwhile, Theodore, aware that his mother was being prevented
from seeing him, began screaming. But no one in the entire emer-
gency area - doctors or nurses - paid any attention to him.
Nor did anyone at the Charlton address the complaints of Theodore
about extreme pain in his neck, arms, and wrists.
The Hospital President, defendant Goodspeed, failed/refused to
respond to the treatment of Theodore while at the Charlton, the
forgery by nurses of Theodore's signature on documents not ever
shown to Theodore, and the outrageous violations of Theodore's
rights as a patient and egregious violations of his civil rights,
as documented in a detailed letter to defendant Goodspeed authored
by plaintiff Harold.
Nor has Theodore been able to obtain his records from the Charlton
Memorial Hospital for November 26, 2002, despite his signing the
proper authorizations for such records.
To this day, the Charlton Memorial Hospital/Southcoast Hospitals
Group continues to withhold Theodore's medical and administrative
records.
And, to this day, Theodore remains unaware of any reason for the
brutal beating of him by the defendant police officers, and de-
fendant Souza has refused to respond to any requests for any
proper records or Reports about the November 26, 2002, beating,
or any incidents before such beating, or any incidents after such
beating, of Theodore.
Theodore, as reported after examination by an independent medical
orthopoedic clinic shortly after the beating, sustained permanent
loss of range of motion in his arms and has permanent sensory
nerve damage to his hand, all directly and proximately related to
the beating by the police defendants, and aggravated further by im-
proper remedial treatment by the Charlton Memorial Hospital/South-
coast Hospitals Group, and the individual defendant hospital staff,
and administrators.

o. For the second time in less than two years, Theodore was sum-
monsed to appear in Fall River District Court on the same charge
of "criminal harassment." On or around February 7, 2003, Theo-
dore appeared in Court.
Again, he was "represented" by defendant Entin.
Again, neither of the two defendant police officers that ar-
rested and brutally beat Theodore were present in Court.
Again, Theodore was unable to confront his accusers.
Again, Entin disappeared from Theodore's sight and emerged some
time later and told Theodore that the charge(s) had been "dis-
missed."
Again, Theodore saw no judge.
Again, Theodore, and then plaintiff Harold, requested all docu-
ments related to these two (2) Court appearances on the same
charge.
And, again, Entin responded that he had no such documents, mem-
orialized in a letter dated April 15, 2004.
Also, in a letter dated April 30, 2002, Entin responded to
plaintiff Harold's need for information said by Entin's father,
David Entin, to be in his son, Jeffrey's safe. The letter from
defendant Entin threatened to "have [Harold] committed to the
appropriate mental institution" and to "have [Harold] arrested
and prosecuted."
And, in response to a complaint against Entin with the Board of
Bar Overseers, Entin wrote that "The complainant, Theodore Kol-
tin, like his mother, Edith Koltin, and his brother, Harold Kol-
tin, suffer from mental and emotional problems" and continues by
stating that "Theodore Koltin's complaint clearly indicates his
delusion. His allegations against the Fall River Police are both
false and/or greatly exaggerated ..." This letter is dated May
26, 2004.

p. During the month of February, 2003, plaintiff Edith slipped and
fell while in the main post office in Fall River, the result of
a wet and slippery rug.
The postal clerks did nothing to assist, but an older gentleman
helped Edith up to sit in a chair and called 911.
Minutes later, defendant Pasternak showed up at the post office
and began laughing loudly at Edith as she sat in pain.
Defendant Pasternak then turned to plaintiff Theodore and began
taunting him, still laughing, saying: "Hey, Ted! Remember me?
Huh? Remember me?"
At this point, Edith began screaming at Pasternak to "Get out of
here!" at which point Pasternak turned and left, still laughing
loudly.

q. On or around the night of April 15, 2004, beginning at approxi-
mately 9:30 PM and lasting until about 6:30 AM the following
morning, the Koltin residence was bombarded with more than a
dozen cars stopping in front of the front door, and with hooded
persons emerging from such cars and banging on the Koltins'
windows, doors, shouting threats of violence, and trying to break
through the doors and windows into the house.
This activity continued throughout the month of April and for
entire month of May.
The Koltins' neighbors, some with dogs in tow, tried to stop

the intruders on several occasions, but they were outnumbered. The neighbors' calls to the Fall River Police were unheeded, as were their calls to the Mayor and to others at Fall River City Hall.

No police showed up, and no arrests were made until April 30, 2004, after which The Herald News in Fall River reported the police had been "receiving a barrage of letters and phone calls from the woman's neighbors reporting that vandals had been throwing debris in her yard, ringing her doorbell, honking their horns, and 'creating a general tumult for this woman [Edith]' in the middle of the night."

The events of April 30, 2004, began with one Nathan DiNucci, a defendant in the instant case, being seen "smashing the woman's parked car with a baseball bat outside her house on Renwood Street."

Only defendant DiNucci, not the other two (2) accomplices, was arrested.

The Koltins were never notified about the verdict for DiNucci.

r. The following month, in July of 2004, the same defendant police officer (Cabral), who arrested DiNucci and let the two other accessories to the crime go free, showed up unannounced outside the Koltin residence with a tow truck and had the Koltins' car towed away, with plaintiffs Theodore and Edith watching helplessly in the window.

No prior notice was given to the plaintiffs about this act, and the Koltins have not seen their car in the nearly one-and-a-half years that have since transpired.

s. Plaintiff Theodore's traumatization by the defendant police officers, along with his still-deteriorating and painful arms and hand injuries sustained by the brutal beating of him three years ago, have prevented him from driving the one remaining car, which has remained idle in the garage, unstarted, for three years.

t. Plaintiffs Theodore and Edith have been effectively confined to their home for three (3) years, relying on the assistance of friends to survive, this as the police surveillance harassment continues, and as defendant Walters continues to destroy the plaintiffs' property along with others, including, but not limited, to her accomplices, which do not exclude the defendant (and non-defendant) police officers.

u. In July of 2005, an entire panel of the plaintiffs' garage door was smashed in with such force that pieces of such panel were found at the opposite end of the garage.

v. Plaintiff Harold sent several Letters of Presentment, pursuant to M.G.L. c.258, to the City of Fall River, the most recent of which was sent via certified mail in November of 2004.

The City of Fall River has responded to none of the plaintiffs' Letters of Presentment.

COUNT I
(42 U.S.C. §1983 against the police defendants and the City of
Fall River)

51. Plaintiffs reallege and incorporate by reference as if fully
    set forth herein, the allegations of paragraphs 1-50 above.

52. The police defendants, acting under color of law, deprived
    plaintiffs of their liberty and property interests without due
    process of law in violation of the 14th Amendment to the United
    States Constitution.

53. The police defendants, acting under color of law, deprived
    plaintiffs of their rights, privileges, and immunities secured
    by the Constitution and laws of the United States and the Com-
    monwealth of Massachusetts.

54. The City of Fall River knew of the repeated civil rights viola-
    tions perpetrated by its employees, the police defendants, and
    took no steps to prevent further such violations. Thus, the City
    of Fall River is liable for the civil rights violations of the
    police defendants.

55. As a result of the civil rights violations of the police defen-
    dants and the City of Fall River, plaintiffs have suffered sev-
    ere emotional and monetary damages.

COUNT II
(M.G.L. c.12, §§11H and 11I state civil rights act against all indivi-
dual and corporate defendants)

56. Plaintiffs reallege and incorporate by reference as if fully set
    forth herein, the allegations of paragraphs 1-55 above.

57. The individual defendants and corporate defendants, through the
    use of threats, intimidation, and coercion, have interfered with
    plaintiffs' exercise and enjoyment of the rights secured by the
    constitution and laws of the United States and the Commonwealth
    of Massachusetts.

58. As a direct and proximate result of the civil rights violations
    of the individual defendants and corporate defendants, plaintiffs
    have suffered severe emotional and monetary damages.

COUNT III
(Assault and Battery against defendants Pasternak, Paquet, and Walters)

59. Plaintiffs reallege and incorporate by reference as if fully set
    forth within, the allegations in paragraphs 1-58 above.

60. Defendants Pasternak and Paquet assaulted and beat plaintiff Theo-
    dore Koltin, causing him substantial pain and permanent bodily harm.

61. The actions of defendants Pasternak and Paquet have caused plain-
    tiff Theodore Koltin to suffer permanent injury and disability.

62. Defendant Walters assaulted and beat plaintiff Edith Koltin more
    than once, causing her, a person in her eighties suffering from
    osteoporosis and severe scoliosis, substantial pain and suffering.

14

63. The actions of defendant Walters have caused plaintiff Edith
    Koltin to suffer injury upon disability.

64. As a result of defendants Pasternak's and Paquet's actions, plain-
    tiff Theodore Koltin has sustained severe emotional, physical, and
    financial injury.

65. As a result of defendant Walters' actions, elderly and disabled
    plaintiff Edith Koltin has suffered severe emotional, physical, and
    financial injury.

COUNT IV
(Trespass, Destruction of Property, and Conversion against defendants
McNerney, Furtado, Saucier, Lavoie, K. Silva, L. Silva, Carey, Paquet,
Briand, Walters, and DiNucci)

66. Plaintiffs reallege and incorporate by reference as if fully set
    forth herein, the allegations of paragraphs 1-65 above.

67. The defendant officers perpetrated a forced entry, based on an
    entirely fabricated Report, without a warrant, with an instruc-
    tion from the defendant Captain McGuire (without a Court Order)
    to "Section 12" both plaintiff Edith and plaintiff Theodore, and
    proceeded to vandalize, steal, trash, and otherwise invade the
    privacy of and intentionally cause severe emotional distress to
    plaintiffs Harold, Edith, and Theodore.

68. Defendant Walters perpetrated, and continues to perpetrate count-
    less trespasses (including Trespass After Notice), perpetrated and
    continues to perpetrate destruction of property to the shrubbery,
    grounds, windows, doors, roof, garage, the cars of plaintiffs Har-
    old, Theodore, and Edith Koltin, and other of the plaintiffs' prop-
    erty, some of which has been stolen by her, causing severe emo-
    tional distress to plaintiffs Harold, Edith, and Theodore.

69. Defendant DiNucci perpetrated at least one act of destruction of
    property by smashing the car owned by Theodore while it was parked
    outside the home of the Koltins, causing severe emotional distress
    to plaintiffs Theodore, Edith, and Harold.

COUNT V
(False Imprisonment against defendants Cabral, Silvia, Pasternak,
and Paquet)

70. Plaintiffs reallege and incorporate by reference as if fully set
    forth herein, the allegations of paragraphs 1-69 above.

71. The defendants named in this Count perpetrated false arrests and
    false imprisonments, knowingly and willfully, against plaintiff
    Theodore, denying him his civil rights and his right to due pro-
    cess under the Fourteenth Amendment of the United States consti-
    tution.

COUNT VI
(Title 42>Chapter 21>Subchapter I>§1985(2)(3): Conspiracy to Interfere
with civil rights against all individual and corporate defendants)

72. Plaintiffs reallege and incorporate by reference as if fully set
    forth herein, the allegations of paragraphs 1-71 above.

15

73. All defendants named in this Complaint, and other unnamed indi-
viduals and entities, conspired with the defendant police officers
to obstruct justice, to intimidate the plaintiffs and their wit-
nesses, and to deprive the plaintiffs and their witnesses of their
rights and privileges, in violation of federal and state laws.

COUNT VII
(Legal Malpractice against Jeffrey Entin)

74. Plaintiffs reallege and incorporate by reference as if fully set
forth herein, the allegations of paragraphs 1-73 above.

75. From January of 1998 to the present, defendant Entin has misrep-
resented plaintiffs Harold, Edith, and Theodore Koltin by know-
ingly and willfully lying to his clients, the plaintiffs; by
slandering and libeling the plaintiffs; by conspiring with the
police defendants to deprive the plaintiffs of their rights; by
intentionally lying repeatedly about his actions when confronted
with complaints from the Board of Bar Overseers authored by the
plaintiffs; by denying any representation of the plaintiffs in
claims in which he clearly represented the plaintiffs; by claim-
ing not to have any legal documents or records of actions by him,
by defendants, or by the Court, and by other acts of deception
and flagrantly unethical conduct as an attorney.

COUNT VIII
(Violations of Privacy Rights pursuant to M.G.L. c.241, §1B against
Jane Does 1-6, defendants Pasternak and Paquet, defendant Goodspeed,
defendant Charlton Memorial Hospital, defendant Southcoast Hospitals
Group, defendants McNerney, Furtado, Saucier Lavoie, K, Silva, L.
Silva, Carey, Briand, Walters, and the City of Fall River)

76. Plaintiffs reallege and incorporate by reference as if fully set
forth herein, the allegations of paragraphs 1-75.

77. Defendants Jane Does 1-6 violated plaintiff Theodore's privacy
rights by not only allowing the two police defendants who had
brutally beat him remain by his bedside as he was being "treated,"
but also deferred to said police defendants in all of their actions
against the plaintiff, including, but not limited to, committing
forgery of Theodore's signature to a form the plaintiff would never
have signed, injecting the plaintiff with a substance which the
plaintiff clearly articulated could have generated a serious al-
lergic reaction, and performing drug tests for any evidence of il-
legal drugs in his system.

78. Defendants Pasternak and Paquet violated plaintiff Theodore's
privacy rights by standing within arm's reach of him and instruct-
ing nurses not to give the plaintiff the water he requested, not
to allow the plaintiff to use the telephone to call his lawyer,
to perform illegal drug tests on the plaintiff, not to allow the
plaintiff's mother to see him, and other egregious acts.

79. Defendants Goodspeed, the Charlton Memorial Hospital, and the
Southcoast Hospitals Group not only failed to address these mat-
ters when they were made aware of them, but also denied plaintiff
Theodore his medical and administrative records, which continue
to be withheld by the Hospital to this day.

80. Defendants McNerney, Furtado, Saucier, Lavoie, K. Silva, L. Silva, Carey, Briand, and Walters forced entry into the Koltins' home and stole, destroyed, or otherwise caused property damage to the plaintiffs.

81. The defendant City of Fall River refused to investigate any claims made by the plaintiffs, even when articulated through Congressman Barney Frank and Senator Edward M. Kennedy, against the police and other defendants.

### COUNT IX
(Violation of Patients Rights Laws pursuant to Chapter 111, §70E against Pasternak, Paquet, Jane Does 1-6, Goodspeed, Charlton Memorial Hospital, and Southcoast Hospitals Group)

82. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1-81.

83. Plaintiff Theodore Koltin's right, upon request, to obtain from the facility (Charlton Memorial Hospital/Southcoast Hospitals Group), or Goodspeed, or from Jane Does 1-6, was violated upon refusal of names and specialty, if any, of the nurses responsible for his care. In fact, the nurses answered his query with statements like, "It's none of your business," and "We don't have names," and by actually turning their name badges around.

84. All defendants named in this Count violated confidentiality of all records and communications to the extent provided by law. In fact, the nurses continuously deferred to defendants Pasternak and Paquet for administrative, medical, and other matters.

85. All defendants named in this Count violated the plaintiff's right to have all reasonable requests responded to promptly and adeuately within the capacity of the facility. In fact, per orders of the police defendants, the nurses refused all reasonable requests by the patient, including, but not limited to, the forced separation between him and his mother.

86. All defendants named in this Count violated the plaintiff's right, upon request, to inspect his medical records and to receive a copy thereof, in accordance with Section 70.

87. All defendants named in this Count violated the plaintiff's right to refuse to be examined, observed, or treated by staff without jeopardizing access to psychiatric, psychological, or other medical care and attention.

88. All defendants named in this Count violated the plaintiff's right to privacy during medical treatment or other rendering of care within the capacity of the facility.

89. All defendants named in this Count violated the plaintiff's right to informed consent to the extent provided by law. In fact, defendant treaters intentionally placed the safety and well-being of the plaintiff in serious jeopardy by injecting him with a drug he had refused because of the potential of serious allergic reaction.

90. All defendants named in this Count violated the law that "A facility shall require all persons ... who examine, observe, or treat a patient ... of such facility to wear an identification badge that readily discloses the first name, licensure status, if any, and staff position of the person so examining, observing, or treating a patient."

Not only did the plaintiff's treaters refuse to identify them-
selves, but they mocked him, verbally abused him, and turned
their name badges around when he began to look for their iden-
tities.

### COUNT X
(Discrimination on the basis of disability and age against all de-
fendants)

91. Plaintiffs reallege and incorporate by reference as if fully set
    forth herein, the allegations of paragraphs 1-90 above.

92. All defendants named in this Complaint violated federal laws
    against discrimination on the basis of disability (in the case
    of plaintiff Theodore) and/or age (in the case of plaintiff
    Edith), pursuant to Title VI of the Civil Rights Act of 1964
    (42 U.S.C. §2000 et seg.); 45 C.F.R. Part 80; Section 504 of
    the Rehabilitation Act of 1973, as amended (29 U.S.C. §794);
    45 C.F.R. Part 84; Age Discrimination Act of 1975, as amended
    (42 U.S.C. §6101 et seg.); 45 C.F.R. Part 91.

### COUNT XI
(Intentional Infliction of Emotional Distress against all individual
defendants)

93. Plaintiffs reallege and incorporate by reference as if fully set
    forth herein, the allegations of paragraphs 1-92 above.

94. The individual defendants engaged in the actions and behaviors
    set forth herein with the intention that they would cause plain-
    tiffs to suffer severe and long-term emotional distress.

95. The actions and behaviors of the individual defendants as set
    forth herein caused plaintiffs to suffer enormous emotional dis-
    tress.

96. The actions and behaviors of the individual defendants as set
    forth herein violated the plaintiffs' protected rights against
    unreasonable search and seizure and other rights of the U.S.
    Constitution, the State's Declaration of Rights, and other state
    laws.

97. The actions of the individual defendants as set forth herein
    were unlawful, humiliating, intimidating, improper, egregious,
    unconscionable, and outrageous in the extreme.

98. The actions of the individual defendants as set forth herein
    caused each of the plaintiffs to suffer, and to continue to suffer,
    severe mental anguish, psychological and emotional distress with
    physical and physiological side effects, and severe pain and suf-
    fering, some or all of which may be permanent, and which have re-
    quired and continue to require medical and psychological treatment.

99. The actions of the individual defendants, with the knowledge of
    the corporate defendants and of the City of Fall River, as com-
    municated directly by the plaintiffs to the Mayor of the City of
    Fall River (Ed Lambert) in 1998 and 1999, and in the years since
    then, include but are not limited to the violations of assault and
    battery, false and unlawful arrest, false and unlawful imprisonment,

outrageous conduct, excessive force, invasion of privacy, unlawful
forced entry, intentional infliction of physical harm, intentional
infliction of emotional distress, negligence, gross negligence,
recklessness in the extreme, negligent infliction of emotional dis-
tress, negligent hiring, negligent retention, and negligent super-
vision.

COUNT XII
(Tort Claims Act, pursuant to M.G.L. c.258, §10[f], clause [1] of sub-
paragraph [j] against the City of Fall River)

100. Plaintiffs reallege and incorporate by reference as if fully set
forth herein, the allegations of paragraphs 1-99 above.

101. The Mayor of the City of Fall River (Ed Lambert) specifically
promised the plaintiffs, in 1998 and 1999 and in the years since
then, that the threats, intimidation, harassment, and other civil
rights violations "would not continue to happen under [his] watch."

102. The Tort Claims Act as referenced in this Count provides that if
a state actor makes a specific promise to a person(s), and then
breaks that promise, and such breach results in damage(s) to said
person(s), then the individual state actors are liable for inten-
tional tort(s), and the municipality is liable for negligent torts.

103. The plaintiffs claim violations of the Tort Claims Act by both the
state (city) actors and by the City of Fall River.


WHEREFORE, plaintiffs request the following:

1. Judgment on Count I in an amount to be determined at trial, plus
interest, costs, and attorneys fees.

2. Judgment on Count II in an amount to be determined at trial, plus
interest, costs, and attorneys fees.

3. Judgment on Count III in an amount to be determined at trial, plus
interest, costs, and attorneys fees.

4. Judgment on Count IV in an amount to be determined at trial, plus
interest, costs, and attorneys fees.

5. Judgment on Count V in an amount to be determined at trial, plus
interest, costs, and attorneys fees.

6. Judgment on Count VI in an amount to be determined at trial, plus
interest, costs, and attorneys fees.

7. Judgment on Count VII in an amount to be determined at trial, plus
interest, costs, and attorneys fees.

8. Judgment on Count VIII in an amount to be determined at trial, plus
interest, costs, and attorneys fees.

9. Judgment on Count IX in an amount to be determined at trial, plus
interest, costs, and attorneys fees.

10. Judgment on Count X in an amount to be determined at trial, plus

interest, costs, and attorneys fees.

11. Judgment on Count XI in an amount to be determined at trial, plus interest, costs, and attorneys fees.

12. Judgment on Count XII in an amount to be determined at trial, plus interest, costs, and attorneys fees.

13. An Order under Counts I and II permanently enjoining the defendants from continuing to engage in conduct against the plaintiffs as found at trial which violates the provisions of 42 U.S.C. §1983 and M.G.L. c.12, §§11H & 11I.

14. Such other relief as the Court determines is just.

## JURY DEMAND

The Plaintiffs demand trial by jury on all counts.

Plaintiffs

Pro Se,

Harold Koltin
P.O. Box 275
Malden, MA 02148
(781) 420-9872


Theodore Koltin
84 Renwood Street
Fall River, MA 02720
Mailing Address
P.O. Box 882
Fall River, MA 02722
(508) 673-9577


Edith Koltin
84 Renwood Street
Fall River, MA 02720
Mailing Address
P.O. Box 882
Fall River, MA 02722
(508) 673-9577

Dated: November 22, 2005