UNITED STATES DISTRICT COURT

FILED
IN CLERKS OFFICE

MASSACHUSETTS DIVISION                C.A. No. 05-CV-11119 PBS

********************************         2007 OCT 29  P 2: 06

HAROLD KOLTIN, EDITH KOLTIN *      U.S. DISTRICT COURT
AND THEODORE KOLTIN          *      DISTRICT OF MASS.

            Plaintiffs,            *

                                   *

v.                                 *

                                   *

CITY OF FALL RIVER et al,          *

            Defendants.            *

********************************

## PLAINTIFF'S MOTION TO VACATE MEMORANDUM AND ORDER OF
## DISMISSAL PURSUANT TO F.R.C.P. 60(b)(1)

Plaintiffs Harold Koltin, Edith Koltin, and Theodore Koltin, pro se plaintiffs in the
above-referenced matter, respectfully move that this Court vacate its Memorandum and
Order of Dismissal, dated November 1, 2006 ("Mem. Ord.") .

As reasons therefore, the Plaintiffs state the following facts:

1. Contrary to the Court's Order, the Second Amended Complaint was timely filed on
November 26, 2005 (not November 28, 2005, as the docket sheet reads, and as the
"Background" section of the Order, incorrectly states)[1].

---

[1] I respectfully note that I placed many unanswered telephone calls and wrote many unanswered letters to the Pro Se Clerk, the
Docket Clerk, and the Judge's Clerk, and appeared in person at the Civil Clerk's Office to ascertain why my inquiries about the status
of the case were not being answered. The Pro Se Clerk, after a diligent search, then asked if I could provide a copy of the Complaint,
date-stamped. Shortly thereafter, I hand-delivered to the Pro Se Clerk a copy of the Second Amended Complaint, date-stamped
November 26, 2005, but which the Court then misconstrued as being November 28, 2005, nearly four months after the Second
Amended Complaint originally had been filed in person, but, according to the Pro se Clerk, "lost" by the Court.

2. Without providing any opportunity to be heard, the Court has determined that the pleadings in the First Amended Complaint and in the Second Amended Complaint "are **purportedly**" signed by all three Plaintiffs [emphasis added]. Moreover, the Court, also without any evidentiary basis, noted that it "**suspects**" [emphasis added] that Harold Koltin signed these pleadings on behalf of his mother Edith, and "**perhaps** of his brother Theodore as well." However, such a statement is simply without foundation and untrue, and certainly is insufficient to form any basis for dismissal of a complaint. Unlike the initial Complaint, where initials were placed with the signatures, the Second Amended Complaint bears no such initials and is what it "purports" to be.

3. Additionally, the Court further noted, and again without any evidentiary basis, that it "**suspects** [emphasis added] that Harold Koltin has violated Rule 11," and so "the Court will allow the instant actions to proceed only as to the claims of Harold Koltin." Again, without any opportunity to be heard, particularly with pro se plaintiffs, the Court has acted in a manner that simply side steps due process, and is acting on "suspicions" – which by their very nature are simply an emotional reaction unsupported by quantifiable fact.

4. The Court is in error with regard to its suspicions about the signatures of each of the three plaintiffs, and, therefore, the consequences imposed by the Court for its erroneous suspicions are clear error. It is unjust that such a ruling was made without the benefit of any hearing and based purely on "suspicions," particularly when such matters easily could have been resolved by a request for evidence. **Such evidence in the form of affidavits from each of Theodore and Edith Koltin are attached hereto for review and consideration by the Court. (See Ex. 1)**

5. Despite the fact that the plaintiff Harold Koltin's fee-waiver application was granted by the Court, as stated by the Court itself [See Mem. Ord. at 1], the Court states that the (Second amended) Complaint "will be reviewed by the Court to determine whether he has demonstrated good cause why this action should not be dismissed," (citing Section 1915 "authorizing federal courts to dismiss actions in which a plaintiff seeks to proceed

without pre-payment of fees ..."), under circumstances which are **not** germane to the instant matter. The Plaintiffs assert that their action has support in both the law and the facts, and that the Complaint states **many** claims on which relief should be granted. [See id. at 3 and 4]

6. The Plaintiffs assert that none of the incidents recounted in the Complaint are "unrelated." [See Mem. Ord. at 5]

7. Plaintiff Harold Koltin asserts that he never stated that "defendant Lavoie said he will become his 'worst nightmare,'" [See Mem. Ord. at 7]. The Court also errs by stating that that its original error appears on Page 8 of the Complaint when it in fact appears on Page 9 of the Complaint. [See Pages 8 and 9 of the Complaint]

8. The Court alleges that defendant Jeffrey Entin "agreed to represent Plaintiff (then-defendant) Theodore, however he failed to do so." [See Memorandum, Page 7]. In fact, Entin **did** represent Theodore, albeit very poorly, and it was **Entin** who "later claim[ed] that he never represented Theodore ..." [See Complaint, P.16]

9. The Court asserts that "Pasternak and Paquet "allegedly used excessive force **to take Theodore to Charlton Memorial Hospital.**" [See Memorandum, Page 8]. However, the Complaint clearly states that "Pasternak stopped Plaintiff Theodore as he was driving his mother, extricated Theodore from his car, and threw him head-first into the side of the police cruiser, then dragged him to the rear of his car, pushed his face into the trunk of his car, hand-cuffed him, and continued beating him relentlessly ... thrust[ing] ... a large round object into [his] mouth and down his throat until [he] was about to lose consciousness ... Pasternak then put him in a head-lock and began strangling him." [See Complaint, Pages 10 and 11] The physical torture occurred on the street, **not** in the Hospital. In fact the Court omits the fact that "excessive force was used" **after Theodore was stopped,**" and then again on the way to the police station. And, in point of fact, Theodore was ambulanced to Charlton Hospital **because** of the permanent musculoskeletal and nerve damage inflicted on him by Pasternak **on the street,** and

because, by the time they had arrived at the police station, he was suffering acute chest pain. Theodore was not "tortured by defendants" while at the hospital, other than in their denying him care by the attending nurses, denying him his legal rights, denying him his patients rights, denying him water, denying him and plaintiff Edith Koltin access to each other after Edith had arrived at the Hospital, etc. by Pasternak and Paquet while at the Charlton. And he did not suffer "[the infliction of] permanent injuries" because of physical torture "by Pasternak **at the hospital.**" [emphasis added]

10. The Court misstates that the Complaint says that "[Fall River Police Chief] Souza failed to respond to … requests for Theodore's medical records." [See Memorandum, Page 8] The Plaintiffs never asked Souza for medical records, and the Complaint does not indicate such. [See Complaint, Page 16]

11. The Plaintiffs disagree with the Court's assertion that Plaintiff Harold Koltin "Failed to Demonstrate Good Cause Why This Action Should Not Be Dismissed," [See Memorandum, Page 9], and they suspect that the Court did **not** "carefully review the plaintiffs' response to the Court's show cause Order." [See Memorandum, Pages 9 and 10] Further, they firmly believe that plaintiff Harold Koltin has demonstrated why the Court should have acted on this Complaint long before now.

12. The Court states that the Plaintiffs' Complaint "was not submitted … until 2005, and is therefore barred by Massachusetts' three-year statute of limitations," [See Memorandum, Page 10] However, the Plaintiffs clearly state in their Complaint that "the actions of the defendants" started "in the summer of 1998" and that [those] actions have been continuous since that time, and continue to this date." [See Complaint, Page 6] Therefore, the unrelenting and unbroken series of incidents by the defendants against the Plaintiffs constitutes a clear pattern of related actions over the past eight-plus years, such circumstances tolling the three-year statute of limitations. The complaint is timely, particularly as to 42 U.S.C. §1983, inasmuch as the Second Amended Complaint clearly alleges that the violations of Plaintiffs' civil rights are ongoing and continuous. For example, at ¶ 50, Plaintiffs clearly allege that the "actions of the defendants have been

continuous since that time and continue to this date…" Accordingly, the continuing violation doctrine tolls a statute of limitations when a defendant engages in continuing objectionable acts. See, e.g., Delaware State College v. Ricks, 449 U.S. 250, 257 (1980). Additionally, this Court is bound to interpret the complaint in the light most favorable to the Plaintiffs.

13. Based on the unjustified belief by the Court that Plaintiff Harold Koltin's "federal claims are untimely," [See Memorandum, Page 10] the Plaintiffs assert that the Court wrongly concludes that it "will not assume jurisdiction over his claims under state law." [See Memorandum, Page 10] Inasmuch as the §1983 claims are viable, there is no reasoned basis for the Court to decline pendant jurisdiction of the related State claims.

14. The Plaintiffs assert that the Court errs trebly when it states that "the 2000-2005 incidents do not involve Harold …" [See Memorandum, Page 10] First, the plaintiffs state that the statute of limitations does not apply, as explained above. Second, even if the statute did apply, the inclusive years would be **2002**-2005, not "2000-2005." [See Memorandum, Page 10] Third, even if there were a two-year statute of limitations, it still would not interfere with Harold's claims, as the May, 2002, unlawful entry and unlawful search and seizure by the several defendant police officers resulted in the theft/conversion of his personal possessions by said defendants [See Complaint, Page 10], as one of many such examples.

15. The Court writes: "to the extent it seeks to assert claims on behalf of his mother and brother, he cannot do so" [See Memorandum, Page 10]. This is a conclusion based on a suspicion by the Court – a suspicion that is dead wrong. Therefore, to the extent that Edith and Theodore assert claims on behalf of themselves, they **can** do so. Consequently, the dismissal of any Plaintiffs from this action, or the dismissal of the action or any part of the action, is, in itself, utterly baseless, wrong, and **itself** suspicious.

16. Every action by the Plaintiffs in the instant case has been submitted to the Court via the Pro Se Clerk, with whom Plaintiff Harold Koltin always communicated to make sure all filings were proper and in compliance with civil procedure.

17. Finally, we note that if there are any issues relating to indigence applications, any or all of the Plaintiffs are willing to make any application needed or, if ordered by the Court, to pay whatever fees are required. Plaintiffs simply seek not to be denied their day in Court based on suspicions or interpretations of the complaint that give the benefit of the doubt to the DEFENDANTs, rather than an interpretation that that gives the benefit to Plaintiffs.

WEHEREFORE, the Plaintiffs Harold Koltin, Edith Koltin, and Theodore Koltin assert and certify [See Attached Affidavits] that each Plaintiff placed his/her signature, of his/her own free will, on both the First and Second mended Complaints, and each of whom re-asserts that Plaintiff Harold Koltin had the permission of Plaintiffs Edith and Theodore to sign their names with his initials below such names, on the Original Complaint, and each of whom prays that this Court vacate its wrong and suspicious conclusions in its dismissals of plaintiffs and/or the action or any part of the action, and allow this case to proceed without further delay, and before one or more of the Plaintiffs expires under the conditions in which they have been forced to live, such Auschwitz-like conditions having deprived the Plaintiffs 27 collective years of life, and their right to die in peace.

By the Plaintiffs,

Theodore Koltin

Theodore Koltin
P.O. Box 882
Fall River, MA 02722
(508) 673-9677

Edith Koltin
P.O. Box 882
Fall River, MA 02722
(508) 673-9577

Harold Koltin
P.O. Box 275
Malden, MA 02148
(781) 420-9872

Prepared with the Assistance of Counsel:
Adam Bond, Esq.
40 N. Main Street
Middleborough, MA 02346

(508)946-1165

## AFFIDAVIT

I, Theodore Koltin, born on March 19, 1954, do hereby testify under oath that I signed the First and Second Amended Complaints (02-CV-11119 PBS) as a co-Plaintiff with my brother Harold Koltin and my mother Edith Koltin, of my own free will.

That a Federal District Court would "lose" said Complaint and have to ask co-Plaintiff Harold Koltin for a copy of the lost Complaint, and then continue its unresponsiveness to our questions of the status of the case, is incomprehensible and unacceptable.

And that the Court would then *dismiss* same complaint and accuse my brother Harold of violating the Court Rules by signing my name and our mother's name is outrageous.

Sworn to under the pains and penalties of perjury on this 12th day of Sept, 2007.

Theodore Edith Koltin

Address

City/State/Zip

(508) 673-9577

Witnessed by

OFFICIAL SEAL
LORIE A. GERVASIO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Aug. 2, 2013

## AFFIDAVIT

I, Edith Koltin, born on March 21, 1922, do hereby testify under oath that I signed the First and Second Amended Complaints (02-CV-11119PBS) as a co-Plaintiff with my sons Theodore Koltin and Harold Koltin, of my own free will.

That a federal judge would "suspect," as I have read, that my son Harold would sign my name to said Complaint absurd and offensive.

Sworn to under the pains and penalties of perjury on this _____ day of _____, 2007.

Edith Koltin
Edith Koltin

84 Rewood St
Address

FALL RIVER, MASS
City/State/Zip 02720

(508) 673-9577

Witnessed by



OFFICIAL SEAL
LORIE A. GERVASIO
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Aug. 2, 2013